NATIONAL LIFE & TRUST CO. v. OMANS.

1. INSURANCE — PREMIUM NOTE — FRAUD — WAIVER — FAILURE TO REPUDIATE.

Though a note given in payment of the first premium on a life policy received by defendant on her application was obtained by fraud of plaintiff's agent, retention of the policy for an unreasonable time, and failure to notify the company that she repudiated the transaction, waive the fraud, and bind defendant to pay the note, though the policy provides that nonpayment of a premium when due shall terminate the company's liability; there being a provision for reinstatement, including the right to payment of a specified sum at the end of 10 years.

2. TRIAL—INSTRUCTIONS IN ABSENCE OF COUNSEL.

There is no error in the court's recalling the jury and giving further instructions in the absence of counsel.

Error to Kent; Wolcott, J.   Submitted April 5, 1904. (Docket No. 65.)   Decided July 27, 1904.

Assumpsit by the National Life & Trust Company against Martha J. Omans on a promissory note. There was judgment for plaintiff, and defendant brings error. Affirmed.

*James E. O'Keefe*, for appellant.

*Don E. Minor*, for appellee.

MONTGOMERY, J.   This action was brought to recover the amount appearing due on a promissory note signed by defendant, payable to the order of Jennie E. Heyser, an agent of the plaintiff, and now owned by the plaintiff. The defendant set up the defense that she never intentionally signed the note in question, and that, if the signature thereto was hers, it was obtained by a fraud practiced by Miss Heyser, the payee.   This defense was supported by

defendant's testimony, to some extent corroborated by other witnesses, but the claim was denied by Miss Heyser, who gave testimony tending to show that the note was given in payment of the first premium on a bond or policy issued by plaintiff, and was signed at the date of making such application. The bond was promptly furnished and received by defendant. There was also testimony that in June following, when the first installment was due upon this note, the defendant received notice from a bank that it was due, and took no notice of the same. She testifies:

"I thought like this—if Miss Heyser had given my note, she could pay it. I didn't know any other way it could be done."

She, however, retained the bond, and did nothing to repudiate either that contract or the note. True, she testifies that she did not know she had received the bond until September, when she had a talk with Miss Heyser and went home, made a search for the bond, and found it among some other papers. How it came to be among these papers is not explained. After this the bond was retained for two years, until suit was brought.

The circuit judge charged the jury as follows:

"There is another element in the case. It appears that the defendant received a policy of insurance, or a bond, as it is called, from the plaintiff, in response to this application which she had signed, and in payment of the premium for which the note in question is claimed to have been given. It was the duty of the defendant on receiving this policy, if she believed it was obtained by fraud, to have either returned the policy to the company, notifying the company or its agent that she would not accept the policy, and to do this within a reasonable time after receiving it, or within a reasonable time after learning of the fraud that she claimed was practiced upon her. This question is, in a sense, independent of whether or not the defendant was induced to sign the note by misrepresentation on the part of the agent. That is to say, if you should find that the defendant signed the note by reason of some fraud practiced upon her in the manner she claims, still, it appearing that this application was

sent in to the company, and the policy sent to the defendant, which she retained, if, under all the evidence in the case, it has appeared in the evidence she retained it an unreasonable length of time, or failed for an unreasonable length of time to notify the company or its agent that she repudiated the transaction and would not be bound by the note, then such retention of the policy without complaint would be a waiver of any fraud she claimed, and would bind her to pay the note."

This instruction was applicable to the facts, and would seem to be but an application of the well-understood rule that one who seeks to rescind a contract for fraud must do so within a reasonable time after the discovery of the fraud. It is urged, however, that there was no occasion for rescission, as the contract of insurance contained the following clause:

"The nonpayment of any premium when due shall forfeit all premiums paid on this bond and terminate the liability of the company thereunder except as hereinafter provided."

There is a further provision for reinstatement or restoration of the bond. In any view of this provision which may be taken, the rights of a delinquent policy holder were not wholly withdrawn. The right to reinstatement existed, including the right to payment of a specified sum at the end of a 10-year term. It was therefore plainly the defendant's duty, on discovering the facts, to make her election to rescind within a reasonable time. *Bostwick* v. *Insurance Co.*, 116 Wis. 392, 408 (80 N. W. 540, 92 N. W. 246).

The court, after the jury had retired, called them in for further instructions, which were given in the absence of the parties. The instructions were taken down by the reporter in the usual manner, but it is claimed the court erred in giving these instructions in the absence of counsel. Counsel cites *Snyder* v. *Wilson*, 65 Mich. 336 (32 N. W. 642); *Fox* v. *Color Works*, 84 Mich. 676 (48 N. W. 203); *Hopkins* v. *Bishop*, 91 Mich. 328 (51 N. W. 902, 30 Am. St. Rep. 480); *Le Beau* v. *Construction Co.*, 109

Mich. 302 (67 N. W. 339).   None of these cases go the
length of sustaining the contention of defendant's counsel.
These cases hold that it is improper for the judge to visit
the jury-room or send communications to the jury in the
absence of any consent of counsel, but none of them holds
that the court is made responsible for the attendance of
counsel in court during trial, or when additional instruc-
tions may be given.

There is no force in the suggestion that the jurors were
coerced.

The judgment is affirmed.

The other Justices concurred.