### LEONARD v. LANS CORPORATION.

#### DISSENTING OPINION.

#### DETHMERS, C. J., and SOURIS and O'HARA, JJ.

1. WORKMEN'S COMPENSATION—APPORTIONMENT—PROCEDURE—INVALIDITY.

   Constitutional invalidity of procedure prescribed by former statute for apportionment of liability between last employer and prior employers in cases of awards for occupational disease did not affect liability of prior employers for apportionment, although the liability was unenforceable because there was no valid statutory procedure for its enforcement (CL 1948, § 417.9).

2. STATUTES—CONSTITUTIONAL LAW.

   No more of a statute will be declared unconstitutional than is necessary in deciding the case in which there is a declaration of unconstitutionality.

3. WORKMEN'S COMPENSATION — APPORTIONMENT — LIABILITY — ENFORCEMENT.

   Amendment of workmen's compensation act, to provide constitutionally valid procedure for enforcement of liability of prior employers for apportionment of award in cases of occupational disease, rendered the prior employers' liability enforceable in proceedings before the workmen's compensation appeal board at least in those cases in which the employees' ·claims had not yet been adjudicated finally by a referee (PA 1962, No 189, amending CL 1948, § 417.9).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 5, 10] 58 Am Jur, Workmen's Compensation § 341.
[2] 50 Am Jur, Statutes § 291 et seq.; 16 Am Jur 2d, Constitutional Law § 181 et seq.
[4] 50 Am Jur, Statutes § 475 et seq.
[6] 50 Am Jur, Statutes § 482.
[7, 11] 16 Am Jur 2d, Constitutional Law §§ 413, 414.
[8, 9] 50 Am Jur, Statutes § 529.

(147)

4. STATUTES—RETROACTIVE APPLICATION—REMEDIAL NATURE.

Retroactive application is made of remedial statutes designed to correct defects in existing law or to provide procedures for enforcing existing liabilities, as distinguished from those creating new substantive rights or destroying vested rights.

5. WORKMEN'S COMPENSATION—APPORTIONMENT—PROCEDURE.

Statute amending procedure to be followed to enforce liability of prior employers for apportionment of award in cases of occupational disease clearly was designed to correct an existing defect of law and, as such, must be regarded as remedial and intended by the legislature for retroactive application in the absence of any adverse consequences to vested rights (PA 1962, No 189, amending CL 1948, § 417.9).

6. STATUTES—REMEDIAL STATUTES.

A statute or amendment which is designed to correct an existing law, redress an existing grievance, or introduce regulations conducive to the public good will generally be regarded as remedial in nature.

7. CONSTITUTIONAL LAW—WORDS AND PHRASES—VESTED RIGHT.

A "vested right," as used in relation to constitutional guaranties, is a vested interest of which it is right and equitable that the government should recognize and protect and of which the individual could not be deprived arbitrarily without injustice.

8. SAME—STATUTORY DEFENSE—VESTED RIGHT.

A statutory defense, though a valuable right, is not a vested right and the holder thereof may be deprived of it after the cause of action to which it may be interposed has arisen.

9. SAME—STATUTORY DEFENSE—VESTED RIGHT.

No right is destroyed when the law restores a remedy which had been lost.

10. WORKMEN'S COMPENSATION—APPORTIONMENT—PROCEDURE—RETROACTIVE APPLICATIONS.

Statute amending workmen's compensation act to provide constitutionally valid procedure for enforcement of liability of prior employers for apportionment of award in cases of occupational disease held, applicable to claims arising prior to the effective date of the amendment in those cases in which the employees' claims had not yet been adjudicated finally by a referee (PA 1962, No 189, amending CL 1948, § 417.9).

11. WORKMEN'S COMPENSATION — APPORTIONMENT — STATUTORY
AMENDMENT—RETROACTIVE EFFECT.

> Amendment to workmen's compensation statute which provided
> for constitutionally valid procedure for enforcement of liability
> of prior employers for apportionment of award in cases of
> occupational disease is not effective retroactively and does not
> apply to injuries which occurred before the effective date of
> the act (PA 1962, No 189, amending CL 1948, § 417.9,
> effective March 28, 1963).

Appeal by leave granted from the Court of Appeals, Division 2, McGregor, P. J., T. G. Kavanagh and Quinn, JJ., order denying leave to appeal from Workmen's Compensation Appeal Board. Submitted December 8, 1966. (Calendar No. 24, Docket No. 51,463.) Decided June 6, 1967.

Richard K. Leonard presented his claim for workmen's compensation against Lans Corporation. Prior employers Die Aids Corporation and Lansing Pattern & Manufacturing Company, and their insurers, added upon motion of Lans. Award to Leonard against Lans, without apportionment against prior employers. Lans appealed to the Appeal Board of the Workmen's Compensation Commission, and the award and denial of apportionment were affirmed. Leave to appeal to Court of Appeals, Division 2, by Lans, denied. Lans appeals. Order of Workmen's Compensation Appeal Board affirmed.

Peter B. Munroe and Larry J. Nobach, for defendants Lans Corporation and Michigan State Accident Fund.

Anderson & Green, for defendants Die Aids Corporation and Auto-Owners Insurance Company, and Lansing Pattern and Manufacturing Company and Michigan Mutual Liability Company.

*Cholette, Perkins & Buchanan (Edward D. Wells,*
of counsel), for defendants Die Aids Corporation,
Hardware Mutual Insurance Company and Citizens
Mutual Insurance Company.

Souris, J. (*dissenting*). In *Trellsite Foundry &
Stamping Company* v. *Enterprise Foundry* (1961),
365 Mich 209, this Court held constitutionally in-
valid the procedure then specified in section 9, part
7 of our workmen's compensation law[1] for apportion-
ing liability for an employee's disabling occupational
disease among his last and prior employers in whose
employment the employee was subject to conditions
to the nature of which such disease was due. The
Court's decision was based upon its finding that
the apportionment procedure of the section denied
prior employers procedural due process since it did
not provide expressly for their participation in the
hearing at which the claimant's right to compensa-
tion benefits was determined.

In 1962, the legislature rectified the procedural
defect of the section by enactment of PA 1962, No
189, which became effective on March 28, 1963.[2] That
act amended section 9, part 7 to provide that upon
motion of a last employer against whom a claim
has been filed prior employers shall be made parties
and shall be given notice of, and an opportunity to
participate in, the hearing before a referee at which
the claimant's right to compensation is determined.

In this case, Leonard filed his application for hear-
ing and adjustment of claim against Lans Corpora-
tion in 1964. He claimed he became disabled by
occupational disease while in Lans' employment

---

[1] CL 1948, § 417.9 (Stat Ann 1960 Rev § 17.228).
[2] Amending CLS 1961, § 417.9 (Stat Ann 1963 Cum Supp § 17.228).
See, currently, CLS 1961, § 417.9, as amended by PA 1965, No 44
(Stat Ann 1965 Cum Supp § 17.228).

prior to March of 1963. Lans thereupon moved, in accordance with Act 189, for the addition as parties defendant of Die Aids Corporation and Lansing Pattern & Manufacturing Company, in whose employment Leonard served prior to his employment by Lans. The hearing referee awarded compensation to Leonard from Lans, but the referee failed to order apportionment of that liability between Lans and the prior employers. Lans appealed to the appeal board, solely on the issue of apportionment, and the board affirmed on the ground that the apportionment provisions of Act 189 could not be applied to a claim which arose prior to its effective date. The Court of Appeals, without opinion, denied review by order merely citing its decision in *Briggs* v. *Campbell, Wyant & Cannon Foundry Company* (1966), 2 Mich App 204.[3] This Court granted leave to appeal.

It is appellees' contention, apparently shared by the appeal board and by the Court of Appeals in *Briggs, supra,* that our decision in *Trellsite* abrogated all of former section 9, part 7 except its first sentence and that thereafter, until Act 189 became effective, there was no liability imposed upon prior employers of a claimant who became disabled from an occupational disease. From this premise it is argued that Act 189 did more than provide a valid procedure for enforcing a pre-existing liability; it is claimed that it created a liability upon prior employers to replace that theretofore abrogated by our decision in *Trellsite* and provided a constitutionally valid procedure for its enforcement. The conclusion urged upon us is that Act 189, since it is claimed to have created a new substantive liability as well as an enforcement procedure, therefore

---

[3] See *Briggs* v. *Campbell, Wyant & Cannon Foundry Company* (1967), 379 Mich 160,

cannot be applied retroactively to claims arising before its effective date without running afoul of constitutional obstacles. We do not accept such conclusion.

Section 9, part 7, as considered in *Trellsite,* read as follows:

"The total compensation due shall be recoverable from the employer who last employed the employee in the employment to the nature of which the disease was due and in which it was contracted. If, however, such disease was contracted while such employee was in the employment of a prior employer, the employer who is made liable for the total compensation as provided by this section may appeal to said board for an apportionment of such compensation among the several employers who since the contraction of such disease shall have employed such employee in the employment to the nature of which the disease was due. Such apportionment shall be proportioned to the time such employee was employed in the service of such employers, and shall be determined only after a hearing, notice of the time and place of which shall have been given to every employer alleged to be liable for any portion of such compensation. If the board finds that any portion of such compensation is payable by an employer prior to the employer who is made liable for the total compensation as provided by this section, it shall make an award accordingly in favor of the last employer, and such award may be enforced in the same manner as an award for compensation."

While it is true that in *Smith* v. *Lawrence Baking Company* (1963), 370 Mich 169, we treated the first sentence of the quoted section as unaffected by our decision in *Trellsite,* we did not attempt in *Smith,* nor have we attempted subsequently, to delineate specifically how much of the language of former section 9, part 7 was invalidated by our decision in

*Trellsite.* It is important to do so now because of appellees' contentions.

It may be conceded that *Trellsite* may be read as broadly as it is read by appellees and, so read, that the result urged upon us by appellees would have to follow. However, the Court's opinion in *Trellsite* need not be read so broadly, and, in our judgment, it should not be.

*Trellsite* presented for the Court's decision only the constitutional validity of the procedure for apportioning liability among a claimant's last and prior employers. For failure to provide prior employers notice of, and an opportunity to participate in, the hearing at which the claimant's right to compensation was adjudicated, this Court in *Trellsite* declared unconstitutional the provisions of the statute for apportionment of the liability among such employers. In other words, the procedure for invoking the last employer's right of apportionment was declared invalid. However, it was not necessary for decisional purposes in *Trellsite* to declare the statutory imposition of several liability upon prior employers invalid, nor did we do so in express language. We perceive no reason now to read into *Trellsite* more than it was necessary to decide in that case.

Since our decision in *Trellsite* invalidated only the procedural provisions of former section 9, part 7, which were found to be constitutionally deficient, the following portion was left intact until amended by Act 189:

"The total compensation due shall be recoverable from the employer who last employed the employee in the employment to the nature of which the disease was due and in which it was contracted. If, however, such disease was contracted while such employee was in the employment of a prior employer,

the employer who is made liable for the total compensation as provided by this section may appeal to said board for an apportionment of such compensation among the several employers who since the contraction of such disease shall have employed such employee in the employment to the nature of which the disease was due. Such apportionment shall be proportioned to the time such employee was employed in the service of such employers * * *."

The language of the former section invalidated by our decision in *Trellsite* read as follows:

"* * * and shall be determined only after a hearing, notice of the time and place of which shall have been given to every employer alleged to be liable for any portion of such compensation. If the board finds that any portion of such compensation is payable by an employer prior to the employer who is made liable for the total compensation as provided by this section, it shall make an award accordingly in favor of the last employer, and such award may be enforced in the same manner as an award for compensation."

Thus, after *Trellsite,* while prior employers continued liable to the last employer for their proportionate share of the compensation payable to a claimant disabled by an occupational disease, there was no valid statutory procedure by which the last employer could enforce that liability in proceedings before the workmen's compensation department. When Act 189 became effective, however, the statutory procedural deficiency resulting from our decision in *Trellsite* was corrected and thereafter the prior employers' liability was enforceable in proceedings before the department at least in those cases in which the employees' claims had not yet been adjudicated finally by a referee, as in this case of Leonard.

We perceive no reason in logic nor in law why the remedial provisions of Act 189 should not be applicable retroactively in those cases in which they may be applied literally. Ample precedent exists for retroactive application of remedial statutes designed to correct defects in existing law or to provide procedures for enforcing existing liabilities, as distinguished from those creating new substantive rights or destroying vested rights.

In *Rookledge* v. *Garwood* (1954), 340 Mich 444, this Court, by unanimous decision, held that an amendment to the workmen's compensation law removing the previous statutory bar to an action against a negligent third party by an injured worker who had elected to proceed first against his employer for compensation was applicable retroactively to claims arising prior to the amendment. The Court noted that the amendment was designed to rectify the injustice of the statutory bar which shortly before had commanded the critical attention of the Court in *Graham* v. *Michigan Motor Freight Lines, Inc.* (1943), 304 Mich 136. In our opinion in *Rookledge, supra,* at p 453, we said:

"It is generally understood that if a statute or amendment is 'designed to correct an existing law, redress an existing grievance, or introduce regulations conducive to the public good,' it will be regarded as remedial in nature. *In re School District No. 6, Paris and Wyoming Townships, Kent County,* 284 Mich 132, 144. The same connotation is given to those statutes or amendments which apply to procedural matters rather than to substantive rights. The definitive rule in this respect, found in 50 Am Jur, pp 33, 34, Statutes, § 15, is:

" 'Legislation which has been regarded as remedial in its nature includes statutes which abridge superfluities of former laws, remedying defects

therein, or mischiefs thereof implying an intention to reform or extend existing rights, and having for their purpose the promotion of justice and the advancement of public welfare and of important and beneficial public objects, such as the protection of the health, morals, and safety of society, or of the public generally. Another common use of the term "remedial statute" is to distinguish it from a statute conferring a substantive right, and to apply it to acts relating to the remedy, to rules of practice or courses of procedure, or to the means employed to enforce a right or redress an injury. It applies to a statute giving a party a remedy where he had none or a different one before.' "

In *Trellsite* this Court's majority forcefully brought to the legislature's attention in 1961 the constitutional invalidity of the procedural provisions of former section 9, part 7, and, in 1962, the legislature corrected the procedural defect to permit enforcement validly of the statutory liability to the last employer imposed upon prior employers. Act 189 clearly was designed to correct an existing defect of law and, as such, it must be regarded as remedial and intended by the legislature for retroactive application. Absent any adverse consequences to vested rights, by such retroactive application of the amendatory act, no constitutional obstacle precludes giving it such effect. Pertinent at this point, also, is *Rookledge*. The nature of vested rights entitled to immunity from retroactive application of statutes was considered at pp 456–458:

"The question of determining what is a vested right is always a source of much difficulty. This is illustrated by our holding in *Wylie* v. *City Commission of Grand Rapids,* 293 Mich 571, where we said at page 587:

" 'Few questions have troubled the courts more than the problem of what are vested rights. What some courts have considered vested, others have considered inchoate. 44 Yale Law Journal, p 358 (*note*). A few courts have frankly recognized that policy considerations, rather than definitions, are controlling, and have defined a vested right as a right of which the individual could not be deprived without injustice.

" ' "In its application as a shield of protection, the term 'vested rights' is not used in any narrow or technical sense, or as importing a power of legal control merely, but rather as implying a vested *interest which it is right and equitable that the government should recognize and protect, and of which the individual could not be deprived arbitrarily without injustice.*" 2 Cooley's Constitutional Limitations (8th ed), p 745.' * * *

"A statutory defense, though a valuable right, is not a vested right and the holder thereof may be deprived of it after the cause of action to which it may be interposed has arisen.

" 'There can, in the nature of things, be no vested right in an existing law which precludes its change or repeal.' *Harsha* v. *City of Detroit,* 261 Mich 586, 594 (90 ALR 853).

"In dealing with the constitutionality of the statute abolishing the statute of limitations the Court said in *Evans Products Co.* v. *State Board of Escheats,* 307 Mich 506, 545, quoting with approval from *Campbell* v. *Holt,* 115 US 620 (6 S Ct 209, 29 L ed 483):

" 'The authorities we have cited, especially in this court, show that no right is destroyed when the law restores a remedy which had been lost.'

"Rookledge, under the act as it existed prior to the amendment, lost his right to enforce his remedy for damages against the third-party tort-feasor when he accepted compensation. The legislature had the authority to revoke this defense and restore to plain-

tiff his remedy for damages. This it saw fit to do.
The situation here presented is akin to the one in-
volved in *Foster* v. *Buckner,* 203 F2d 527, 6th Cir-
cuit (12 NACCA Law Journal, 217, 218). There,
the defendant tort-feasor sought a summary judg-
ment on the ground that plaintiff had made an
election by accepting compensation. Judgment was
denied with the following statement (p 531):

" 'A further conclusive answer to this contention
is that the Michigan statute which was construed
in the *Dinardo Case* [*Dinardo* v. *Consumers Power
Co.* (CA 6, 1950), 181 F2d 104] has now been
changed. An amendment was enacted to CL 1948,
§ 413.15 (Stat Ann 1950 Rev § 17.189), in 1952, PA
1952, No 155, after the instant action was commenced
but while it was pending. The former statute re-
quired an employee to elect whether to pursue his
remedy against the employer for compensation or
to seek his common-law remedy against the third
party causing the injury. Under the present statute
the employee may receive compensation or take
proceedings to enforce compensation payments and
also sue the third party. The statute provides in
substance, that in case of recovery against the third
party, after deducting expenses of recovery, the
amount of the judgment is to be used first to re-
imburse the employer or the workmen's compensa-
tion insurance carrier for amounts paid or payable
under the compensation act to date of recovery
and the balance is paid to the insured employee or
his dependents. This statute pertains to the remedy
and hence applies to the present action. *Judd* v.
*Judd,* 125 Mich 228; *Heineman* v. *Schloss,* 83 Mich
153; *Nash* v. *Robinson,* 226 Mich 146; *Detroit Club*
v. *State of Michigan,* 309 Mich 721; *Stott* v. *Stott
Realty Company,* 288 Mich 35. Since the change
in the statute created no new cause of action and
the amendment merely limited a procedural de-
fense, the amended statute governs this contro-
versy.' "

We would hold that section 9, part 7, as amended by PA 1962, No 189, is applicable to claims arising prior to the effective date of the amendment in those cases in which the employees' claims had not yet been adjudicated finally by a referee. The referee and appeal board erred in refusing to apportion liability between the last and prior employers of claimant Leonard.

The award should be reversed and remanded for further proceedings consistent herewith. Appellants should be allowed to tax their costs.

DETHMERS, C. J., and O'HARA, J., concurred with SOURIS, J.

BLACK, J. In this case the appeal board concluded:

"The determined date of injury in this case is March 9, 1963. As of said date, our statute lacked an effective apportionment provision. Through Act 189, PA 1962, effective March 28, 1963, an apportionment section was added to part 7 of the statute. Since we have held in *Wright* v. *Campbell, Wyant & Cannon Foundry Company,* 1964 WCABO 187, that said amendment is not effective retroactively, it follows that the appellants are not entitled to have their liability to plaintiff prorated among the named prior employers, and, we so find.

"The referee's decision is modified so as to deny any right of apportionment herein."

I would affirm the board's ruling and order. See separate opinion of *Briggs* v. *Campbell, Wyant & Cannon Foundry Company* (1967), 379 Mich 160.

KELLY, T. M. KAVANAGH, and ADAMS, JJ., concurred with BLACK, J.

BRENNAN, J., did not participate in the decision of this case.